UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JULIETTE COUSINO,          :
                           :
     Plaintiff             :
                           :
     v.                    :
                           :      No. 3:09CV2138 (DJS)
KRISTIN MUIR,              :
                           :
     Defendant             :


MEMORANDUM OF DECISION AND ORDER

The plaintiff Juliette Cousino ("Cousino" or "the

plaintiff") brings this action against Detective Kristin[1] Muir

("Muir" or "the defendant"). Cousino alleges pursuant to 42

U.S.C. § 1983 that the defendant violated her rights under the

Fourth Amendment to the United States Constitution[2] by conducting

an unlawful search and seizure. The plaintiff alleges that

Detective Muir is liable in her individual capacity because she

was "acting under color of law" throughout the duration of the

---

[1]The correct spelling of the defendant's first name is "Kristin."
(Doc. # 30, at 1).

[2]Although the Complaint alleges violations of state law, the
plaintiff failed to respond to the defendant's argument that any
state law claims should be dismissed. The Court therefore
considers any state law claim to have been abandoned. *See
Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 305 (D. Conn.
2009) (internal quotation marks omitted) ("Federal courts may
deem a claim abandoned when a party moves for summary judgment on
one ground and the party opposing summary judgment fails to
address the argument in any way.").

search and seizure, and "had the duty and the opportunity to

protect the plaintiff from the unlawful actions of the other

officers but failed and refused to perform such duty, thereby

proximately causing" the plaintiff's "severe emotional distress,

nervousness, fear and anguish . . . [and] economic losses." (Doc.

# 1, at 2-3, ¶¶ 5, 6, 10).

The defendant has filed a motion for summary judgment

pursuant to Fed. R. Civ. P. 56. For the reasons that hereafter

follow, the defendant's motion for summary judgment (**doc. # 30**)

is **GRANTED**.

## I.FACTS

Before reciting the facts which the Court finds to be

undisputed, the Court wishes to address an issue concerning the

plaintiff's filings in opposition to the defendant's motion. The

Rules of the United States District Court for the District of

Connecticut contain specific requirements pertaining to papers

filed in opposition to a motion for summary judgment. Those

papers must include a "'Local Rule 56(a)2 Statement,' which

states in separately numbered paragraphs meeting the requirements

of Local Rule 56(a)3 and corresponding to the paragraphs

contained in the moving party's Local Rule 56(a)1 Statement

whether each of the facts asserted by the moving party is

admitted or denied." L. Civ. R. 56(a)2.

In the Local Rule 56(a)2 Statement, each denial of a fact asserted by the moving party "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." L. Civ. R. 56(a)3. Failure to provide this specific citation "may result in the Court deeming certain facts that are supported by the evidence admitted . . . ." *Id.*

In connection with the consideration of a motion for summary judgment, a district court is not obligated to "perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials [properly] cited to it by the parties." *Morales v. New York State Department of Labor*, 530 F. App'x 13, 14 (2d Cir. 2013) (internal quotation marks and citation omitted). In this regard, the Court notes that "Plaintiff's Local Rule 56 Statement" does not in all instances cite to evidence in the record that supports the plaintiff's denials of assertions made by the defendant. By way of example, the defendant's Local Rule 56(a)1 Statement asserts that "[t]here were already federal agents inside the residence at 49/51 Baker Avenue when Detective Muir arrived." (Doc. # 30-2, at 6, ¶ 19). That assertion is followed by specific citations to Muir's affidavit and her deposition transcript. In denying this assertion, Cousino cites

to pages 16-17 of her deposition transcript. The totality of

Muir's pertinent testimony on the cited pages is as follows:

> Q    Can you please tell me what first made
> you become aware that the law enforcement
> personnel were entering your residence?
>
> A    There were two people in my room talking.
> I opened by eyes and there's two girls standing
> there. They were talking, and I asked what
> they were doing there.
>
> Q    Standing where?
>
> A    In my bedroom.
>
> Q    Can you identify who they were?
>
> A    One was - - her name was Kristine Muir.
> And the other, I was told she was from I.C.E.[3]
> But I have no idea.
>
> Q    What did they say to you?
>
> A    I asked them what they were doing there.
> I had wanted to stay in bed. They told me I
> had to get up and go sit in the living room.
>
> Q    Who spoke first? Did they speak to you or
> did you speak to them?
>
> A    I spoke. I wanted to know what they were
> doing there.
>
> Q When you asked - -
>
> A    I opened my eyes and I see two girls
> there. I said,"What are you doing here? You
> don't belong here."
>
> Q    Did they tell you that they had a warrant?

---

[3]"I.C.E." refers to the agency within the U.S. Department of
Homeland Security known as Immigration and Customs Enforcement.

> A   I wasn't coherent. I was half-asleep. I
> just - - you know, I was scared. I want - -
> you know, I want you out of here.
>
> Q Can you describe what the defendant in this
> lawsuit, Kristine Muir, looks like?
>
> A   Yes. Attractive girl. Light hair.

(Doc. # 34-2, at 5-6, p. 16:22-25, p.17:1-25). While this testimony supports the fact that Muir was one of the two officers or agents who first entered Cousino's bedroom, it does not support, or even address, whether other agents or officers were already inside the residence at 49/51 Baker Avenue when Muir arrived at that location. The Court notes that, according to her own testimony, Cousino's eyes were closed and she was half-asleep when Muir and the federal agent entered her bedroom.

In another paragraph, Muir asserts that "[t]he door to the plaintiff's first floor apartment was already open when Detective Muir entered the residence at 49/51 Baker Avenue." (Doc. #30-2, at 6, ¶ 20). This factual assertion is again followed by specific citations to Muir's affidavit and deposition transcript. Cousino's denial of this factual assertion cites to the same pages of her deposition transcript, i.e., 16-17, that are quoted at length above. The testimony Cousino relies upon for her denial of Muir's assertion does not support that denial. It fails to address in any way the question of whether or not the door to

Cousino's apartment was already open when Muir entered the residence.

To the extent that the defendant's factual assertions are properly supported by the evidence and the plaintiff's denials of those assertions are not, the Court will deem the defendant's assertions admitted. See L. Civ. R. 56(a)3 ("failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1").

At the time of the events in question, Cousino was a seventy-three year old female with an eighth grade education who owned a two-family home in Meriden, Connecticut. The first floor apartment's address is 49 Baker Avenue and the second floor apartment's address is 51 Baker Avenue. Cousino resided in the first floor apartment, 49 Baker Avenue, with her grandson Ryan Hettrick ("Hettrick"), who previously resided in 51 Baker Avenue but moved into 49 Baker Avenue around April 2009. In December 2009 Michelle Hettrick, who is the mother of Ryan Hettrick, lived in the second floor apartment at the 51 Baker Avenue address.

The defendant, Kristin Muir, is a detective in the Meriden Police Department ("the Department") assigned to the Special Crimes Unit, which investigates sex crimes and crimes against children. In December 2009 Muir was contacted by I.C.E. Agent

Jeremy Shein ("Shein") who asked Muir whether the Department had

any prior experience with Hettrick.[4]  Muir found no information

on Hettrick in the Department's information system and advised

Shein of that fact. Shein subsequently asked Muir if she would

"assist and stand by" during the execution of a search warrant by

I.C.E. agents. (Doc. # 30-2, at 4, ¶ 13). After obtaining

permission from her supervisor, Muir agreed to assist Shein.

Shein obtained a warrant for 51 Baker Avenue to search for

child pornography after an IP (Internet Protocol) Address linked

to that address posted images that appeared to depict child

pornography on Tinypic.com. A number of independent records,

including records from the Department of Motor Vehicles ("the

DMV") and the United States Postal Inspection Service, listed

Hettrick's residence as 51 Baker Avenue and one source listed

both 49 and 51 Baker Avenue as Hettrick's address.[5] The federal

agents also had a photograph of Hettrick.

Shein obtained a subpoena for the images uploaded to

Tinypic.com from the IP address linked to 51 Baker Avenue and

received a CD (compact disc) with the images and related content.

Also present on the CD were images that appeared to be "screen

shots" from multiple computers. One screen shot image displayed a

file titled "RYAN," and in the upper right hand corner of the

---

[4] Ryan Hettrick was born April 4, 1989. (Doc. # 32, at 5, ¶ 4).
[5] Shein also noted that the DMV issued a driver's license to
Michelle Hettrick and listed her address as 51 Baker Avenue.

screen shot image the name "Ryan Hettrick" appeared in the chat window. Based on this information, Shein believed that "at least one individual residing at 51 Baker Avenue, Apt. 2 . . .  and having access to the Internet at that address, was the individual who possessed and utilized the IP address . . .  to upload . . . images of child pornography. . . ." (Doc. # 32, at 27, ¶ 36).

On December 17, 2009, Muir, two federal agents, and two Meriden patrol officers met at an apartment complex in preparation for the execution of the search warrant. After a surveillance team observing 51 Baker Avenue saw an individual exit 51 Baker to warm up a vehicle and re-enter the residence, Muir and the federal agents drove to 51 Baker Avenue. Prior to entering 49/51 Baker Avenue, the federal agents determined that Hettrick lived in the first floor apartment, 49 Baker Avenue.

When Muir arrived at 49/51 Baker Avenue, the door was ajar and other officers were already inside. Cousino acknowledges that the door to her apartment might have been unlocked and that the officers did not kick the door in or cause any property damage. Cousino was in bed with her eyes closed when Muir and an I.C.E. agent entered her bedroom and instructed her to get up and go sit in the living room.

While sitting in her living room, Cousino requested to use the restroom and was required to wait approximately twenty minutes before being allowed to use the facilities. At some

point, the plaintiff asked for permission to use her cell phone

to call her son Mark. Cousino was granted permission to make the

call, and Muir followed her into her bedroom as she made the

phone call and spoke with her son. Additionally, Cousino was

permitted to go on her porch to smoke a cigarette.

Both parties agree that Muir did not participate in

searching the home, that Muir stood watch in Cousino's presence

while other officers searched, and that Muir did not say anything

offensive to Cousino. The officers and agents were in

plainclothes and did not draw their weapons at any point.

Muir initially did not know what the specific goal of the

search warrant was, but did know that it involved personal

property believed to be at that location. While Muir had no

specific understanding as to who owned the property that was the

subject of the search, she believed the target to be Ryan

Hettrick, because she had been asked to check Department records

with respect to that name.

Approximately one hour after the search began, Cousino was

asked to sign a consent form. Cousino states that "[o]ne of the

fellows in the kitchen" said that "they were going to search the

whole day if [she] didn't sign for them to take the computer. So

if [she] didn't sign, that they were going to do a big search,

take every computer in [their] home." (Doc. # 34-2, at 10, p.

25:9-12, 14). The items seized during the search were Hettrick's

computer-related material. At the time of the search Cousino did not own a personal computer or use computers.[6]

Cousino does not think the officer asking for consent to search was Muir, but stated she did not know who it was. According to Muir, I.C.E Agent Jolinda Wnuk[7] explained the consent to search form to Cousino. Agent Wnuk's name is also listed on Cousino's consent to search form as the person who explained the form to her. Muir further maintains that Cousino told Wnuk she understood the form before signing it. Cousino asserts that she felt she was being held prisoner for the duration of the search, which lasted for approximately two hours. At the end of the search, the officers and agents left the home in the same condition as when they entered. The federal agents left a copy of the search warrant inventory with Cousino before they left her house.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[6] Hettrick also signed a consent to search form at 7:15 a.m. (Doc. # 32-2, at 2).
[7] At her deposition, the defendant spelled this Agent's name "W-n-e-k." (Doc. # 30-6, at 12, p. 11:24).  On the consent form signed by Cousino, however, it is spelled "Wnuk". (Doc. # 32-1, at 2). The Court believes that Wnuk is the correct spelling of this Agent's name.

P. 56(a). In considering a summary judgment motion, "the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1061 (2d Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When summary judgment is sought on an issue, if there is "any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.*

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Id.* at 1060-61 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Regional Economic Community Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 45 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Aldrich v. Randolph Central School District*, 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248).

In determining a summary judgment motion, the court must "draw all factual inferences in favor of the party against whom

summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion." *Rodriguez*, 72 F.3d at 1061. While the nonmoving party may not rest upon mere conclusory allegations or denials to defeat a summary judgment motion, "[s]ummary judgment is inappropriate when the admissible materials produced in opposition to the summary judgment motion make it arguable that the claim has merit." *Jasco Tools, Inc. v. Dana Corp.,* 574 F.3d 129, 151 (2d Cir. 2009) (internal quotation marks omitted). In considering a summary judgment motion, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

B. FOURTH AMENDMENT VIOLATION

1. Warrant Requirement

Cousino alleges in her complaint that Muir conducted a search and seizure without a warrant and without probable cause in violation of the Fourth Amendment. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV. Muir argues that the federal agents possessed a valid warrant. Cousino contends that because the warrant described the place to be searched as "[t]he residence located at 51 Baker Avenue, Apt 2 " and not 49 Baker Avenue, which was the residence actually searched, it was invalid. (Doc. # 32, at 3).

"[T]he Fourth Amendment's demand that search warrants particularly describe the place to be searched provides a limitation curtailing the officers' discretion when executing the warrant . . . ." *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012)(internal quotation marks and citation omitted). "It is long-established that '[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.'" *Id*. (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)).

The Second Circuit has noted that "Courts of Appeals have rejected Fourth Amendment challenges to warrants that contain partial misdescriptions of the place to be searched so long as the officer executing the warrant could ascertain and identify the target of the search *with no reasonable probability of searching another premises in error*." *Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir. 1994) (internal quotation marks and citation omitted). Moreover, "[w]arrants have been upheld despite 'technical errors,' such as an incorrect street address, when the

possibility of actual error is eliminated by other information,
whether it be a detailed physical description in the warrant
itself, supplemental information from an appended affidavit, or
knowledge of the executing agent derived from personal
surveillance of the location to be searched." *Id.*

In *Voustianiouk*, the Second Circuit addressed a motion to
suppress evidence seized by federal agents during the course of a
search of a second-floor apartment in a two-story building. The
agents had obtained a warrant authorizing a search of the first-
floor apartment at a specified address, but when they arrived to
execute the warrant, they discovered that the suspect they were
investigating actually lived on the second floor and was home at
that time. The agents proceeded to search the second-floor
apartment and found evidence of child pornography.

The Second Circuit concluded in *Voustianiouk* that the search
of the second-floor apartment violated the Fourth Amendment and
that the evidence obtained during that search should have been
suppressed. The Court determined that the apartment the agents
searched was not "the one that the magistrate intended to
authorize them to search," which is of paramount importance in
"determining the permissible scope of a search that has been
authorized by a search warrant . . . ." 685 F.3d at 211. In
reaching that conclusion, the Second Circuit stressed the fact
that the agents had made a conscious decision to not disclose the

-14-

name of the suspect to the judge who issued the warrant. "By purposefully excluding any mention of [the suspect's] name from the warrant and affidavit, the government also deprived the magistrate judge of any opportunity to assess whether there was evidence to support a search of [the suspect's] home, if indeed that home turned out to be located somewhere other than the first floor." *Id.* at 213. Since the information contained in the government's affidavit identified only the first-floor apartment at the designated address, and made no mention of the name of the suspect under investigation, the Court reasoned that the magistrate judge could not have intended to authorize a search of the suspect's residence if it was other than the first-floor apartment. "[T]here is no indication that the magistrate judge who issued the search warrant was aware that the government even considered [the defendant] a suspect, or knew what evidence the government had to support its suspicions." *Id.* at 209.

There are significant distinctions between the facts before this Court and those in *Voustianiouk*. Here, the information before the magistrate judge who issued the search warrant specifically identified Ryan Hettrick as a subject of the ongoing investigation. The government's affidavit contained a good deal of information about the evidence supporting the government's suspicions concerning Hettrick, including the fact that a CD obtained by the government that contained images appearing to

depict child pornography included a screen shot image displaying the name "Ryan Hettrick." (Doc. # 32, at 27, ¶ 34). That affidavit also indicated that DMV records listed 51 Baker Avenue as Hettrick's address, and that the United States Postal Inspection Service confirmed on December 15, 2009, that Hettrick received mail at 51 Baker Avenue. Another background screening company identified Hettrick as a resident of 49 Baker Avenue, but also listed 51 Baker Avenue as a possible address for him. Prior to entering 49/51 Baker Avenue, the federal agents determined that Hettrick lived in the first floor apartment, 49 Baker Avenue. The federal agents also had a photograph of Hettrick.

In *Voustianiouk*, the Second Circuit noted that "we need not and do not address whether a warrant that authorizes the search of a particular person's apartment, but mistakenly lists an incorrect apartment number, would satisfy the particularity requirement of the Fourth Amendment." 685 F.3d at 212. As previously noted, the key question is whether "these agents searched an apartment other than the one that the magistrate intended to authorize them to search." *Id.* at 211. On the basis of the  particular facts before it, the Court concludes that the search conducted in Cousino's apartment, which is where Hettrick was then residing, did not exceed the scope of the search authorized by the search warrant. Consequently, that search did

not violate Cousino's rights under the Fourth Amendment and the
defendant Muir is entitled to judgment as a matter of law.


    2. Qualified Immunity[8]

    Even if the Court had concluded that the search conducted at
49 Baker Avenue exceeded the scope authorized by the warrant, the
Court would nevertheless find that Muir is entitled to qualified
immunity in this instance. "The doctrine of qualified immunity
protects government officials from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." *Pearson v. Callahan,* 555 U.S. 223, 231
(2009)(internal quotation marks omitted). A government official
is entitled to qualified immunity "regardless of whether the
government official's error is a mistake of law, a mistake of
fact, or a mistake based on mixed questions of law and fact."
*Id.*(internal quotation marks omitted).

    "Under federal law, a police officer is entitled to
qualified immunity where . . . it was objectively reasonable for
[her] to believe that [her] actions were lawful at the time of

---

[8]The defendant also argued that the search conducted at 49 Baker
Avenue did not violate the plaintiff's Fourth Amendment rights
because Cousino consented to the search. In brief, the Court
believes there are material facts genuinely in dispute as to
whether Cousino's consent was "freely and voluntarily given";
*Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); such that
summary judgment would not be warranted on the basis of consent.

the challenged act." *Hargroves v. City of New York*, 411 F. App'x 378, 382 (2d Cir. 2011)(internal quotation marks omitted). "Ordinarily, determining whether official conduct was objectively reasonable requires examination of the information possessed by the official[] at that time (without consideration of subjective intent)." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir. 2003) (internal quotation marks omitted).

Determining whether Muir's conduct was objectively reasonable requires an examination of the totality of the circumstances surrounding her actions. The Court looks to the undisputed material facts, i.e., the material facts as to which the Court has determined there is no genuine dispute, for the purpose of making this determination. Muir, a detective in the Meriden Police Department, was asked by a federal agent if she would "assist and stand by" during the execution of a search warrant by I.C.E. agents. (Doc. # 30-2, at 4, ¶ 13). Muir had no involvement in the process of applying for the search warrant and initially did not know what the specific goal of the search warrant was, other than that it involved personal property believed to be at the 49/51 Baker Avenue location.  Additionally, Muir was not shown a copy of the warrant prior to the search, and there is no evidence before the Court to indicate that when she later did see the warrant, she noticed that the address on the warrant was incorrect. Muir did not participate in searching the

-18-

home; she simply stood watch in Cousino's presence while other officers searched.

Given the information possessed by Muir at the time of the search, and her limited role in its execution, the Court finds that Muir's actions on that occasion were objectively reasonable and that she therefore would have been entitled to qualified immunity even if the warrant obtained by the federal agents had not been valid.[9]

The Court's finding that Muir would be entitled to qualified immunity is buttressed by the statement of the Second Circuit, made after the events in question took place, that "we need not and do not address whether a warrant that authorizes the search of a particular person's apartment, but mistakenly lists an incorrect apartment number, would satisfy the particularity requirement of the Fourth Amendment." *Voustianiouk*, 685 F.3d at 212. This is so because "[f]or a right to be clearly established for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Vincent v. Yelich*, 718 F.3d 157, 169 (2d Cir. 2013)(internal quotation marks omitted).  Since the contours of the right in question had

---

[9]The Court's consideration of the qualified immunity issue is based solely on the actions and involvement of Muir, who was the only official named as a defendant in this action.

not been defined with reasonable specificity at the time of the events at issue, there was no clearly established right that Muir could have violated.

## **CONCLUSION**

For the foregoing reasons, the Defendant's motion for summary judgment is **(doc. #30)** is **GRANTED**.  All claims against Kristin Muir are hereby DISMISSED and the Clerk is directed to close this case.

**SO ORDERED** this 24th day of July, 2014.

_____/s/ DJS_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE